UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

**ROBERT B. LOVE,**
               **Plaintiff,**

v.                                                   Case No. 15-cv-0650

**MEDICAL COLLEGE OF WISCONSIN et al.,**
               **Defendants.**
_____

## DECISION AND ORDER

Plaintiff Robert Love, brings this suit alleging that defendants Medical College of Wisconsin ("MCW"), Froedtert Memorial Lutheran Hospital ("Froedtert"), and several physicians employed by MCW violated the False Claims Act ("FCA") and various state tort laws. Before me are the MCW defendants' motion for judgment on the pleadings, Froedtert's motion to dismiss for failure to state a claim, and some miscellaneous motions.

### I. Background

Plaintiff, a transplant surgeon and professor, alleges that beginning in 2012 he was employed by MCW and performed surgeries at Froedtert, a hospital staffed by MCW faculty. Plaintiff further alleges that he became increasingly concerned about the quality of care provided by MCW and Froedtert and complained many times to MCW and Froedtert management. Plaintiff further alleges that defendants retaliated against him for complaining by placing him on a leave of absence, revoking his hospital privileges, removing him from the call schedule, spreading negative and false information about him, and providing prospective employers with negative and false information.

On August 26, 2014, MCW and plaintiff signed a separation agreement in which plaintiff released MCW and its employees from all claims arising before the agreement.

MCW agreed not to disparage plaintiff, including to prospective employers. Plaintiff ultimately found another job. I will discuss plaintiff's allegations in more detail as I discuss plaintiff's specific claims.

## II. Motions to Dismiss

First, I address MCW's motion for judgment on the pleadings and Froedtert's motion to dismiss. I review both motions under the same standard. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). To survive, plaintiff must allege facts which give rise to a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). I draw all inferences in plaintiff's favor. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013).

### A. FCA Retaliation Claim

Plaintiff first alleges is that defendants MCW and Froedtert retaliated against him in violation of the FCA. The FCA provides that "any employee, contractor or agent" may obtain relief if he "is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts" performed in an effort to stop a violation of the FCA. 31 U.S.C. § 3730(h)(1). He alleges that he raised concerns with MCW and Froedtert about possible FCA violations, including the provision of care below Medicare standards, fraudulent billing practices, and violations of federal regulations. He further alleges that MCW and Froedtert took numerous retaliatory actions against him including placing him on a leave of absence, removing him from clinical duties, threatening to terminate him for cause, removing him from the call schedule, reducing his salary, and revoking his hospital privileges. MCW and Froedtert

2

present separate arguments in support of dismissing plaintiff's claim.

**1. Liability Release**

MCW presents an affirmative defense that plaintiff's claim is barred by the release contained in the separation agreement between MCW and plaintiff. The release provided:

> In exchange for the benefits and payment to him described in this agreement, Dr. Love hereby irrevocably and unconditionally releases, waives, and fully and forever discharges MCW and its past and current agents, servants, officers, trustees, insurers, attorneys, and employees and their respective successors and assigns (the "Released Parties") from and against any and all claims, liabilities, obligations, covenants, rights, demands, attorney fees and/or costs and damages of any nature whatsoever, whether known or unknown, anticipated or unanticipated, relating to or arising out of any agreement, act, omission, occurrence, transaction or matter up to and including the date of this Agreement, including without limitation, any and all claims relating to or arising out of his employment by MCW or the termination hereof.

Compl. Ex. A at 2 (ECF No. 2-1).

I agree with MCW that the above-quoted language released any FCA retaliation claims against MCW and its employees arising before August 26, 2014. The language is unambiguous; plaintiff waived "any and all claims . . . of any nature whatsoever . . . " against MCW and its employees. *Id. See Town Bank v. City Real Estate Dev., LLC*, 330 Wis. 2d 340, 356 (2010) ("If the contract is unambiguous, our attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence."). It is also significant that the parties excluded certain types of claims from the release but not retaliation claims.

Plaintiff argues that the release did not foreclose claims for intentional or reckless misconduct. I disagree. The provision not only includes claims "of any nature whatsoever," but specifically includes age discrimination claims which are based on intentional conduct.

3

Plaintiff's argument that a release of claims for intentional or reckless conduct is unenforceable based on public policy is also unpersuasive. Contracts which release a party from liability for future intentional or reckless conduct are unenforceable because they encourage such conduct. *See Dobratz v. Thomson*, 161 Wis. 2d 502, 514 (1991). The release in the present case, however, does not release defendants from liability for future acts but rather for past acts, and such releases are routinely upheld. *See e.g. Dietrich v. Trek Bicycle Corp.*, 297 F. Supp. 2d 1122, 1127 (W.D. Wis. 2003); *Morris-Shaw v. Stora Enso N.A.*, No. 04-C-704, 2005 WL 1957676 (W.D. Wis. 2005); *see also Smith v. Amedisys, Inc.*, 298 F.3d 434, 440–41 (5th Cir. 2002) (stating that "[a] general release of Title VII claims does not ordinarily violate public policy"). Thus, plaintiff has waived any FCA retaliation claim against MCW and its employees based on events prior to August 26, 2014.

However, plaintiff alleges that one of the retaliatory acts occurred after the agreement was signed, on September 14, when his privileges at Zablocki Veterans' Affairs Medical Center were revoked. MCW argues that this claim fails because plaintiff has not sufficiently pled that MCW was responsible for the revocation. I disagree; plaintiff alleges that Zablocki is an affiliate of MCW, that it is "one of MCW's major sites for medical and surgical training," and that "MCW provides services and operates graduate medical programs at the Zablocki." Compl. ¶ 2 (ECF No. 2). Plaintiff also alleges that Zablocki revoked his privileges "at the behest" and "with the knowledge and approval" of MCW employees. *Id.* ¶ 139. These allegations support an inference that MCW played a role in the revocation decision, and plaintiff may proceed on his retaliation claim against MCW

4

based on this conduct.

## 2. Retaliation by Froedtert

Froedtert argues that plaintiff fails to allege essential elements of an FCA retaliation claim against it. To state a claim, plaintiff must plead sufficient facts to support the inference that Froedtert "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against [him] in the terms and conditions of employment because of" FCA-protected activity. § 3730(h)(1). Most of the retaliatory conduct alleged by plaintiff involves the acts of MCW or its employees. Plaintiff contends that Froedtert is vicariously liable for these acts because it exercised control over them. As noted, however, plaintiff released MCW's employees of liability for pre- Aug 26, 2014 retaliation claims thus, even assuming vicarious liability, Froedtert cannot be liable for a released claim. *Schroeder v. Pederson*, 131 Wis. 2d 446, 450 n.1 (Ct. App. 1986) ("[T]he release of a servant operates to release a master who is liable solely under the doctrine of respondeat superior.").[1] Plaintiff's allegation that Froedtert is liable for MCW's actions also fails for other reasons which I need not presently address.

As to the post-agreement incident involving the revocation of plaintiff's privileges at Zablocki, plaintiff makes no allegations which support the inference that Froedtert may be held liable. Plaintiff does not allege an affiliation between Zablocki and Froedtert or that any Froedtert employee was involved in the decision to revoke or encouraged it. Nor does plaintiff allege that Froedtert controlled the MCW employees who were involved, let alone that they exercised control over the employees at the time they allegedly influence the

---

[1] Plaintiff does not name these employees, doctors Evans and Tweddell and attorney Cohn, as individual defendants.

5

revocation decision. Thus, plaintiff may not proceed on a retaliation claim against Froedtert based on the revocations of his privileges at Zablocki.

Plaintiff also alleges one direct act taken by Froedtert which he characterizes as retaliatory, namely that in May 2014, Froedtert's president, Cathy Buck, sent an email to MCW and Froedtert employees stating that plaintiff was "on a leave of absence" and would "no longer perform cardiac surgery here." Compl. ¶ 116. This allegation, however, is insufficient to plead an FCA retaliation claim against Froedtert because it did no more than communicate accurate information. Thus, plaintiff fails to plead an FCA retaliation claim against Froedtert.

**B. State Law Tort Claims**

Plaintiff brings numerous state law tort claims against MCW, Froedtert, and the individual physician defendants, including three defamation claims, two tortious interference with prospective contractual relations claims, a breach of contract claim, and an intentional infliction of emotional distress claim. Again, MCW and Froedtert offer separate arguments for dismissal. The parties agree that Wisconsin law governs these claims.

**1. Preemption**

MCW argues that plaintiff's defamation and intentional infliction of emotional distress claims against it and its employees are pre-empted by the Wisconsin Worker's Compensation Act ("WCA") which provides that "the right to recovery of compensation under [the WCA] shall be the exclusive remedy against the employer, any other employee of the same employer and the worker's compensation insurance carrier." Wis. Stat. §

6

102.03(2). For the WCA to apply: (1) the employee must sustain an "injury," defined as "harm caused by accident or disease," *Jenson v. Emp'rs Mut. Cas. Co.*, 154 Wis. 2d 313, 316 (Ct. App. 1990), and (2) at the time of the injury, the employee must be "performing service growing out of and incidental to his or her employment." § 102.03(1).

Wisconsin courts have concluded that defamation and intentional infliction of emotional distress claims involve "injuries" as defined by the WCA and are pre-empted. *Jenson*, 154 Wis. 2d 313 (intentional infliction of emotional distress claim); *Becker v. Automatic Garage Door Co.*, 156 Wis. 2d 409 (Ct. App. 1990) (defamation claim). Specifically, the term "accident" in the WCA includes intentional acts and covers emotional and mental injuries that are caused by more than day-to-day stress. *Jenson*, 154 Wis. 2d at 317–18. Plaintiff argues that his claims are not pre-empted because, in addition to mental injuries, he alleges economic damage in the form of lost earnings and lost future earnings. "Wisconsin courts have consistently ruled that the WCA exclusive remedy provision is meant to supplant actions in tort against employers." *Marino v. Arandell Corp.*, 1 F. Supp. 2d 947, 953 (E.D. Wis. 1998). "[W]orkers' compensation acts such as the WCA were not designed to regulate or deter employer conduct, but to financially compensate injured employees and, specifically, to redress impaired earning capacity." *Id.* at 951. Thus, plaintiff's injury is the type covered by the WCA.

In order to establish preemption, MCW must also show that plaintiff sustained his injury "in the course of employment." *Weiss v. City of Milwaukee*, 208 Wis. 2d 95, 104–05 (1997). In assessing this issue, I look to the "time, place, and circumstances" under which the injury occurred. *Id.*; *see also Bostwick v. Watertown Unified Sch. Dist.*, No. 13-C-1036,

Case 2:15-cv-00650-LA   Filed 04/22/16   Page 7 of 17   Document 51

2013 WL 6267860, at *2 (E.D. Wis. Dec. 4, 2013).

On May 8, 2014, plaintiff was placed on a leave of absence, and other employees were so informed. Compl. ¶¶ 115, 116. On May 20, 2014, plaintiff was informed that "there was no longer a clinical role for him at MCW and Froedtert." *Id.* ¶ 124. On May 26, 2014, he was told that he would not be allowed to attend any future faculty meetings, and on May 27, 2014, he was eliminated from the call schedule. *Id.* ¶¶ 126, 127. I can plausibly infer from these allegations that after May 2014, plaintiff was not "performing service growing out of and incidental to his or her employment" after May 2014. *See Bostwick*, 2013 WL 6267860, at *3 (declining to dismiss because plaintiff "was on administrative leave for an extended period of time . . . [making it] even difficult to draw the connection that the injuries occurred at a point in time when [plaintiff] was performing services growing out of or incidental to his employment").

Plaintiff's defamation claims are based on three incidents: an email sent by defendant Warltier to a prospective employer allegedly containing false and negative statements about plaintiff, a letter written by defendant Nicolosi allegedly containing disparaging statements that was circulated to MCW and Froedtert staff by defendants Kerschner and Papp, and statements made by defendant Lindenbaum to another prospective employer. Warltier's email and Lindenbaum's statements occurred after May 2014, and thus claims arising out of those communications survive MCW's motion to dismiss. However, the Nicolosi letter was sent before May 2014, and Kerschner's and Papp's alleged dissemination of it also occurred before then. Thus, plaintiff's defamation claims based on these occurrences must be dismissed. However, plaintiff also alleges that "MCW and Froedtert employees have published allegations in the Nicolosi Letter, or the

8

Nicolosi Letter itself, to third parties . . . after August 26, 2014." Compl. ¶¶ 151–52. Plaintiff may proceed on his defamation claim against MCW based on this allegation. With regard to plaintiff's intentional infliction of emotional distress claim, plaintiff may only proceed on his claim based on events occurring after May 2014.

**2. Vicarious Liability**

Plaintiff's state law tort claims against Froedtert are premised on the theory that Froedtert is vicariously liable for the actions of the individual physician defendants. Froedtert argues that plaintiff fails to plausibly allege this. Vicarious liability also known as respondeat superior, requires the existence of a master-servant relationship. *Kerl v. Dennis Rasmussen, Inc.*, 273 Wis. 2d 106, 112 (2004). "A servant is one employed to perform service for another in his affairs and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right to control." *Heim v. Hanke*, 5 Wis. 2d 465, 468 (1958). Although the right to control is the dominant factor in determining whether a master-servant relationship exists, I also consider other factors, such as the place of work, the time of the employment, the method of payment, the nature of the business or occupation, which party furnishes the instrumentalities or tools, the intent of the parties to the contract, and the right of summary discharge of employees. *Estate of Hegarty v. Beauchaine*, 249 Wis. 2d 142 (Ct. App. 2001).

I conclude that plaintiff pleads sufficient facts to plausibly allege that Froedtert is vicariously liable for the acts of defendants Nicolosi, Kerschner, Papp, Warltier, and Lindenbaum. Plaintiff alleges that all of the physician defendants are employed by MCW, Compl. ¶¶ 4–8, but also that they work and teach at Froedtert. *Id.* ¶ 3 ("Froedtert is an adult

acute care hospital that serves as a primary teaching site for MCW . . . [and is] staffed by MCW physician faculty."). Plaintiff also alleges that Froedtert had in place various policies governing physician behavior, *Id.* ¶¶ 42, 59, and that Froedtert management participated in physician review procedures, *Id.* ¶ 68. Plaintiff also alleges that he complained about the incidents giving rise to the tort claims to Froedtert's senior management, suggesting that such management could have responded to them. *Id.* ¶¶ 29, 33, 35, 46, 51, 55, 62. These allegations support the inference that Froedtert exercised control over the physician defendants at least while they were performing services at FMLH.[2]

Plaintiff also alleges that the events giving rise to the state law tort claims occurred at Froedtert. This allegation supports an inference that Froedtert is both the place of employment and that it provided the physician defendants with the instrumentalities and tools to perform their work. These allegations, together with those supporting the inference that Froedtert exercised control over the physician defendants, render Froedtert's vicarious liability plausible. That the physician defendants were allegedly employed by MCW does not defeat plaintiff's vicarious liability theory. *See Kerl*, 273 Wis. 2d at 121 ("[T]he test looks beyond labels to factual indicia of control or right to control."); *Hegarty*, 249 Wis. 2d at 183–84 (noting that a servant-master relationship can exist "between a special employer to whom an employee is loaned"). Thus, to the extent that plaintiff can proceed with state

---

[2] This distinguishes Froedtert's vicarious liability as it relates to plaintiff's FCA retaliation claim from Froedtert's vicarious liability as it relates to plaintiff's tort claims. In his retaliation claim, plaintiff has alleged no facts to support the inference that the MCW employees involved were acting under Froedtert's control when taking retaliatory action, which was administrative in nature. Here, by contrast, plaintiff has alleged sufficient facts to plausibly plead that Froedtert had control over the physician defendants at the time they committed the alleged torts.

10

tort claims against MCW, he can also proceed against Froedtert.

### 3. Intentional Infliction of Emotional Distress

Both MCW and Froedtert argue that plaintiff fails to adequately plead his intentional infliction of emotional distress claim. To plausibly allege this claim, plaintiff's allegations must support the inference that (1) defendants' conduct was intended to cause emotional harm, (2) defendants' conduct was extreme and outrageous, (3) defendant's conduct was a cause-in-fact of plaintiff's emotional harm, and (4) plaintiff suffered an extreme disabling emotional response to the conduct. *Rabideau v. City of Racine*, 243 Wis. 2d 486, 501 (2001).

Defendants argue that plaintiff fails to plausibly allege that he suffered an extreme disabling emotional response inasmuch as he found another job and is able to work. However, defendants cite no authority for the proposition that the extreme disabling emotional response element requires a plaintiff to allege that he cannot work. Further, plaintiff alleges that he suffered emotional distress and mental pain and anguish because defendants' humiliated him and harmed his reputation. Compl. ¶¶118, 141, 162, 195, 204, 220, 228, 237. These allegations are sufficient at this stage of the case.

Froedtert also argues that plaintiff fails to allege any extreme or outrageous conduct that it or its employees took against plaintiff. However, as discussed, plaintiff adequately alleges that Froedtert is vicariously liable for the conduct of the individual defendants directly involved in the alleged "protracted campaign to ruin [plaintiff's] career and well-earned reputation." *Id.* ¶ 251. And the allegations as to individual defendants' conduct are sufficient to plead extreme and outrageous conduct. Thus, plaintiff may proceed on his

11

intentional infliction of emotional distress claim against all defendants.

### 4. Tortious Interference with Prospective Contractual Relations

Plaintiff's tortious interference claims allege that physician defendants sent false and disparaging statements to two prospective employers, costing him a job. Froedtert argues that plaintiff has not sufficiently alleged a prospective contract with a prospective employer, St. Mary's, to survive a motion to dismiss. Under Wisconsin law, a tortious interference claim must be based on a "sufficiently certain, concrete and definite prospective relationship." *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 689 (7th Cir. 1999). Plaintiff has alleged that he communicated extensively with St. Mary's about prospective employment, that he interviewed with two surgeons at St. Mary's with whom he already had longstanding professional relationships, that St. Mary's did not hire him because of the Warltier email, and that one St. Mary's surgeon told plaintiff that the email "knocked [him] out of the job." Compl. ¶¶ 154–61. These factual allegations make it plausible that plaintiff's prospective contractual relationship with St. Mary's was sufficiently concrete and that the only reason St. Mary's did not hire plaintiff was because of the Warltier email. Plaintiff may proceed with his tortious interference claims.

### II. Motions to Seal

The parties all request that the complaint and all subsequent filings in the case be maintained under seal. However, in this Circuit, there is a strong presumption that documents relied upon by the court be publicly available. *Cty. Materials Corp. V. Allan Block Corp.*, 502 F.3d 730, 740 (7th Cir. 2007). Parties seeking an exception to this rule must show good cause, which generally only exists when the documents contain trade

secrets or other information that should be held in confidence. *Id.*

Here, the parties have not shown good cause to maintain the vast majority of the documents under seal. The parties argue that the complaint and subsequently filed documents contain confidential and sensitive medical information. Patient medical records are generally maintained under seal; however, here, no medical records have been filed. The complaint includes general descriptions of medical procedures and refers to patients by their initials rather than including personally identifiable information. Thus, the information should be publicly available.[3] *See Sutterfield v. City of Milwaukee*, 870 F. Supp. 2d 633, 645 (E.D. Wis. 2012) (sealing a medical record containing sensitive medical information but refusing to seal the parties' briefs generally discussing the record).[4]

The parties also argue that the complaint references and contains as an exhibit a confidential settlement agreement and that it should thus be sealed. However, the fact that the parties agreed to keep the settlement agreement confidential is not good cause to keep

---

[3] Should the parties file actual medical records during summary judgment or at trial, I will address then the appropriate way to protect sensitive medical information.

[4] Defendants cite the Health Insurance Portability and Accountability Act ("HIPPA") to support their argument that the complaint should be sealed or, in the alternative, that allegations regarding patient treatment should be redacted. *See, e.g.*, 45 C.F.R. § 45 C.F.R. 164.514(b)(2)(i) (requiring a covered entity to remove identifiers from individually identifiable health information, such as name, address, social security numbers, account numbers, and images). HIPPA, however, does not govern the standard for whether documents filed in federal court should be publicly available; rather, it governs covered entities' responsibilities in handling sensitive medical information. Further, it is doubtful that the general allegations in the complaint constitute individually identifiable health information under HIPPA because (a) the allegations are not information "created or received by a health care provider," and (b) the complaint does not identify individual patients or contain enough specific information to give rise to "a reasonable basis to believe the information ca be used to identify the individual." 45 C.F.R. § 160.103 (defining "individually identifiable health information").

13

it sealed, especially in an action such as this where one of the claims is that a party breached the agreement. *See U.S. v. Sanford-Brown, Ltd.*, 788 F.3d 696, 713 (7th Cir. 2015) ("[W]e [will] not seal documents . . . simply because the parties ha[ve] agreed to do so among themselves because that practice deprives the public of material information about the judicial process.").

The parties also argue that the allegations in the complaint will negatively affect the professional reputations of several doctors, including non-party doctors who are unable to defend themselves. This is not good cause. Almost every lawsuit involves allegations that will negatively affect a party's reputation. *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002) ("[M]any litigants would like to keep [certain negative information] confidential, but when these things are vital to claims made in litigation they must be revealed.").

Finally, the parties argue that Wis. Stat. § 146.38, which prohibits a person who participates in the review or evaluation of health care services to disclose information acquired in connection with such review or evaluation, requires that the complaint be sealed because it reveals details about MCW and Froedtert's evaluation procedures. However, § 146.38 merely creates civil liability for a person who improperly discloses such information; it does not require that this case be maintained under seal simply because the complaint discusses the procedures. The information regarding defendants' evaluation programs is vital to plaintiff's claims and thus should be public. For these reasons, I will deny the motions to seal.

Finally, I address the parties' recent correspondence regarding plaintiff's proposed redacted complaint. On April 14, the parties unsuccessfully participated in mediation, and

14

afterwards, plaintiff submitted a letter to the court, along with a proposed redacted complaint, which only redacts the initials of various patients. Plaintiffs proposed this redaction in response to defendants' arguments regarding HIPPA and the disclosure of individually identifiable health information. The parties then proceeded to submit several letters back and forth arguing about whether the proposed redactions were sufficient to address defendants' HIPPA concerns. However, the parties did not file these documents on the docket, and they did not send paper copies to my chambers. Instead, they emailed this chain of correspondence to my proposed orders email box based on the "confidential" nature of the information.

Because the parties agree that, at least, the patients' initials should be redacted from the complaint, and because such information in no way influenced or was relevant to my decision on the parties' motion to dismiss and motion for judgment on the pleadings, I will allow the unredacted complaint to remain under seal and order plaintiff to publicly file the redacted complaint. Additionally, because MCW defendants have filed an answer which also references patients' initials, I will allow the unredacted answer to remain under seal and order MCW to publicly file an answer redacting only the patients' initials. I will also order the parties to publicly file the chain of correspondence the parties have sent to my proposed order box over the past week. As is noted on the Eastern District's website, my proposed order email address is for *proposed orders only*. It is not checked with any regularity and should *never* be used to send me correspondence. Further, the various letters the parties submitted contained legal argument, and any factual or legal argument a party wishes for me to consider must be filed on the docket to preserve transparency. Aside from the complaint and MCW's answer, I will order that all other documents filed in

15

this case thus far be unsealed and made publicly available.

### III. MCW's Motion to Strike

MCW also asks that if I dismiss plaintiff's FCA retaliation claim, I strike portions of plaintiff's complaint which only support that claim and which are prejudicial to the reputations of numerous MCW doctors, some of whom are non-parties. Because plaintiff may proceed on at least part of his retaliation claim and because the allegations are arguably still relevant to plaintiff's state law claims, I will deny this request.

### IV. Conclusion

**THEREFORE, IT IS ORDERED** that the parties' motions to seal/restrict (ECF Nos. 1, 5, 8, 23, 26, 28, 37, 40) are **GRANTED** in part and **DENIED** in part. The Clerk shall make all documents filed in this case, except for the complaint (ECF No. 2) and MCW's answer (ECF No. 19), publicly available.

**IT IS FURTHER ORDERED** that within seven (7) days of this order, plaintiff shall publicly file his proposed redacted version of the complaint, including a publicly available copy of Exhibit A.

**IT IS FURTHER ORDERED** that within seven (7) days of this order, MCW defendants shall publicly file a redacted version of their answer.

**IT IS FURTHER ORDERED** that within seven (7) days of this order, the parties shall publicly file the chain of correspondence they sent to my proposed order box.

**IT IS FURTHER ORDERED** that plaintiff's unopposed motion for leave to file a surreply (ECF No. 42) is **GRANTED**. The Clerk shall file the proposed surreply.

**IT IS FURTHER ORDERED** that MCW defendants' motion for judgment on the

pleadings (ECF No. 21) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that MCW defendants' motion to strike allegations (ECF No. 21) is **DENIED**.

**IT IS FURTHER ORDERED** that FMLH's motion to dismiss (ECF No. 30) is **GRANTED** in part and **DENIED** in part.

Dated at Milwaukee, Wisconsin, this 22nd day of April, 2016.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge