# EXHIBIT A

# SEPARATION AGREEMENT

This Separation Agreement is made by and between Robert Love, M.D. ("Dr. Love") and The Medical College of Wisconsin, Inc. ("MCW"), a Wisconsin non-profit corporation (collectively, the "Parties").

## BACKGROUND

Dr. Love's administrative appointment as Chief of Division of Cardiothoracic Surgery, Department of Surgery has ended. Dr. Love remains employed by MCW as a Professor of Surgery, with tenure. Dr. Love has decided to terminate his employment relationship with MCW, and the Parties have agreed to resolve all of the matters between them based upon a mutual understanding without further expenditure of time, effort or money.

NOW, THEREFORE, for good and valuable consideration, the adequacy of which is hereby acknowledged, the Parties agree as follows:

1. **Resignation.** Dr. Love will resign as Professor of Surgery on April 1, 2015 (the "Resignation Date"). Dr. Love agrees that the execution of this Agreement shall effect his resignation from MCW effective April 1, 2015 if he has not resigned effective on an earlier date, in which case he will notify MCW promptly of the prior resignation date. Should Dr. Love accept employment outside MCW prior to April 1, 2015, he shall resign from MCW prior to commencing that other employment, which earlier date shall be deemed the "Resignation Date" hereunder. Between the Effective Date of this Agreement and the Resignation Date, Dr. Love will remain on a leave. Dr. Love shall not perform any duties during the leave, except with respect to his research, as set forth in Section 6. Dr. Love will have access to an administrative assistant in the Department of Surgery for up to 10 hours per week of administrative time and will be given an MCW mailing address for use until the Resignation Date.

2. **Vacate Office; Email Account; Equipment.** Dr. Love represents that he will remove his personal property from MCW and return to MCW all of its property, whether owned or leased by it, by the Resignation Date of this Agreement. Access to Dr. Love's MCW email account will cease upon the Resignation Date.

3. **Compensation.** Dr. Love will be paid his current monthly base salary of $51,250.00 commencing July 1, 2014 through April 1, 2015 (that paycheck will be issued in early April). All monthly payments will continue to be subject to the legally required withholdings and customary benefit costs. While Dr. Love remains on the MCW payroll, he shall have access to his usual employee benefits and 403(b) participation, and any benefits provided by or through the Department of Surgery, on such terms as are provided to tenured faculty of that Department. Should Dr. Love resign prior to April 1, 2015, MCW's obligations under this Section shall cease, except that an amount equivalent to the base salary continuation not yet paid to Dr. Love under this Section shall be added to the Severance Payment described in Section 4 below.

4. **Severance Payment.** MCW will pay Dr. Love a single, lump sum severance payment of $350,000, increased by any amounts owing to Dr. Love pursuant to the last sentence of Section 3, above (the "Severance Payment"). The amount of the Severance Payment is not reduced, and the timing of the payment of the Severance Payment does not change, if the Resignation Date occurs prior to April 1, 2015. The Severance Payment shall be subject to all legally required withholdings, including but not limited to deductions for federal and state taxes. In order to qualify for the Severance Payment, Dr. Love must execute, after the Resignation Date, a second release in the form attached hereto as Exhibit A, and the rescission period must expire without revocation by Dr. Love, provided that such rescission period ends prior to April 30, 2015. MCW will promptly deliver the payment to Dr. Love by directly depositing this amount in the bank account in which the payments under Section 1 hereof are being deposited within fourteen (14) days after the expiration of the rescission period, but in all events no later than June 1, 2015.

1

5. **COBRA**. Commencing on the first day of the first calendar month after the Resignation Date, MCW shall offer Dr. Love and his dependents, if applicable, a continuation of health and dental benefits coverage as required under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). Continuation of health and/or dental coverage shall be subject to timely payment of premiums by or on behalf of Dr. Love and his dependents, if applicable, to the third party administrators that administer MCW's health and dental benefit plans. It is Dr. Love's responsibility to pay these premiums if benefit coverage is to continue. Dr. Love shall retain all other rights under COBRA.

6. **Research Laboratory**. MCW will continue to fund Dr. Love's research laboratory (the "Laboratory") at its current staffing and supply level through September 30, 2014. MCW will store any frozen research specimens/samples at its expense until the Resignation Date. At any time before that date, Dr. Love may arrange to have the frozen specimens/samples transferred/shipped to another institution at his expense (or paid by the receiving institution). If Dr. Love is not successful in transferring the samples as of the Resignation Date, then the samples will be destroyed or otherwise disposed of by MCW at its expense. Any and all research supplies and equipment purchased during Dr. Love's employment with MCW will remain the property of MCW and the Department of Surgery.

7. **Release of Claims.** In exchange for the benefits and payment to him described in this Agreement, Dr. Love hereby irrevocably and unconditionally releases, waives, and fully and forever discharges MCW and its past and current agents, servants, officers, trustees, insurers, attorneys and employees and their respective successors and assigns (the "Released Parties") from and against any and all claims, liabilities, obligations, covenants, rights, demands, attorney fees and/or costs and damages of any nature whatsoever, whether known or unknown, anticipated or unanticipated, relating to or arising out of any agreement, act, omission, occurrence, transaction or matter up to and including the date of this Agreement, including without limitation, any and all claims relating to or arising out of his employment by MCW, the termination thereof (which the parties acknowledge has been agreed to by both prior to execution of this agreement) and arising under the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), the Wisconsin Family Medical Leave Act or the Federal Family Medical Leave Act of 1993 (the "Claims"). Notwithstanding anything contained herein to the contrary, Dr. Love is not releasing the Released Parties from, or waiving any Claims as regards, (i) any obligations that MCW owes to Dr. Love under (A) this Agreement, and (B) the welfare benefit plans and qualified retirement plans of MCW, and (ii) any and all indemnification rights that Dr. Love may have by contract, under the By-Laws of MCW and pursuant to any insurance that MCW carries.

8. **Compliance with Older Workers Benefit Protection Act**. Dr. Love and MCW acknowledge that it is their mutual intent that Dr. Love's release and discharge of the Released Parties from liability under the ADEA (the "Release") contained in Section 7 of this Agreement fully comply with the Older Workers Benefit Protection Act. Accordingly, this Agreement requires, and Dr. Love agrees, that:

    (a) The Release of his rights or claims under the ADEA is his knowing and voluntary act;

    (b) This Release shall apply only to rights and claims arising prior to the Effective Date of this Agreement, and the Release shall not apply to rights or claims that arise after the Effective Date of this Agreement;

    (c) He is releasing rights or claims under the ADEA in exchange for consideration consisting of continued monthly salary payments at his current salary through April 1, 2015 (minus legally required deductions and benefit costs), and but for this Agreement, Dr. Love acknowledges that he would not otherwise be entitled to the payment described in Section 3;

    (d) He has been advised in writing by MCW to consult with an attorney prior to executing this Agreement and has done so;

2

(e) He has been given a period of at least 21 days within which to consider this Agreement;

(f) He has the right to revoke this Agreement for a period of seven (7) days after his execution of this Agreement, and none of the terms and provisions of this Agreement shall become effective or enforceable until the revocation period has expired. In computing the seven-day period, the day the Agreement is executed by Dr. Love shall not be included, and the last day of the seven-day period shall be included. If the last day of the period falls on a Saturday, Sunday, or holiday, the last day of the revocation period shall be the next business day following the Saturday, Sunday, or holiday.

(g) He has read and fully understands the terms of this Agreement.

(h) Should Dr. Love elect to revoke this Agreement, the compensation set forth in Sections 3 and 4 shall cease, and Dr. Love shall be paid in an amount to be determined, or shall resign without condition.

9. **Effective Date.** The effective date of this Agreement (the "Effective Date") shall be the day following the revocation period referred to in Section 8 of this Agreement, unless this Agreement is revoked by Dr. Love during that period by written notice.

10. **Non-Admission.** Neither the negotiations concerning this Agreement, nor the actual provision of consideration set forth in this document, nor the drafting or execution of this document by either party shall be construed as an acknowledgment or admission by either party of any liability to the other party, other than under this Agreement, or to any other individual or entity of any wrongdoing under federal, state or local law.

11. **Confidentiality.** Dr. Love and MCW agree that the terms of this Agreement and the discussions leading to its execution are confidential, and he will not disclose any information concerning its terms to anyone at any time, except to his significant other, immediate family, legal counsel, accountants or tax advisors, unless compelled to do so under subpoena or other judicial process.

12. **Non-Disparagement.**

    (a) Dr. Love, on the one hand, and MCW's officers, on the other hand, agree not to make disparaging remarks about each other. If, after the date of this Agreement, MCW's officers are contacted by third parties regarding Dr. Love, they will provide an explanation (and limit any discussion) as to the circumstances surrounding Dr. Love's employment and termination consistent with that contained in the reference letter, attached as Exhibit B. MCW will make its officers aware of this provision of this Agreement for purposes of assuring their compliance therewith.

    (b) MCW and Dr. Love have agreed to the terms of a reference letter, attached as Exhibit B. Five (5) originals of that document shall be provided to Dr. Love on the Effective Date. MCW shall provide additional originals of the reference letter in accordance with Dr. Love's request or in response to the request of a prospective employer.

13. **Entire Agreement.** This Agreement contains, and the terms constitute, the entire agreement of the parties concerning all matters affecting Dr. Love's employment with MCW and supersede all prior agreements, understandings and practices concerning such matters, including without limitation, any prior employment agreements Dr. Love may have had with MCW, the provisions of any MCW personnel documents, handbooks or policies and any prior customs or practices of MCW with respect to bonuses, severance pay, vacation pay, sick pay, fringe benefits or otherwise. Notwithstanding the foregoing, the terms of all welfare benefit and retirement plans of MCW shall continue to apply to Dr. Love and his family in accordance with their terms.

14. **Notices.** Any notice required under this Agreement shall be in writing and be deemed given when received by email, by in-person delivery or overnight delivery as follows:

3

To MCW: Sarah Cohn, Office of the General Counsel, Medical College of Wisconsin.

To Dr. Love: James Gardner, Lawton & Cates, SC,

15. **Governing Law; Binding Effect.** This Agreement shall be governed by the laws of the State of Wisconsin, without regard to principles of conflicts of laws. This Agreement shall inure to the benefit of and be binding upon the parties hereto, their successors, assigns, heirs and personal representatives.

16. **Severability.** If any provision of this Agreement shall be contrary to the laws of Wisconsin or any other applicable law, at the present time or in the future, such provision shall be deemed null and void, but such shall not affect the enforceability of the remaining provisions of this Agreement.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed as of the date last below written.

Date: Aug. 26, 2014    By: _____
                            Robert Love, M.D.


The Medical College of Wisconsin, Inc.

Date: _____    By: _____
                                      John R. Raymond, Sr., MD
                                      President and CEO

4

# AGREEMENT

This Agreement is made by and between Robert Love, M.D. ("Dr. Love") and The Medical College of Wisconsin, Inc. ("MCW"), a Wisconsin non-profit corporation (collectively, the "Parties").

## BACKGROUND

Dr. Love and MCW have entered into a Separation Agreement effective _____, 2014 (the "Separation Agreement") under the terms of which, they have agreed to terminate their employment relationship and resolve all of the matters between them based upon a mutual understanding without further expenditure of time, effort or money. Because Dr. Love's employment with MCW did not end until _____, a further release is a condition precedent to Dr. Love's receipt of certain severance benefits described in the Separation Agreement.

NOW, THEREFORE, for good and valuable consideration, the adequacy of which is hereby acknowledged, the Parties agree as follows:

1. The Separation Agreement is incorporated by reference into this Agreement.

2. **Release of Claims.**

In exchange for the benefits and payment to him described in this Agreement, Dr. Love hereby irrevocably and unconditionally releases, waives, and fully and forever discharges MCW and its past and current agents, servants, officers, trustees, insurers, attorneys and employees and their respective successors and assigns (the "Released Parties") from and against any and all claims, liabilities, obligations, covenants, rights, demands, attorney fees and/or costs and damages of any nature whatsoever, whether known or unknown, anticipated or unanticipated, relating to or arising out of any agreement, act, omission, occurrence, transaction or matter up to and including the date of this Agreement, including without limitation, any and all claims relating to or arising out of his employment by MCW or the termination thereof and arising under the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), the Wisconsin Family Medical Leave Act or the Federal Family Medical Leave Act of 1993. Notwithstanding anything contained herein to the contrary, Dr. Love is not releasing the Released Parties from, or waiving any Claims as regards, (i) any obligations that MCW owes to Dr. Love under (A) the Separation Agreement, and (B) the welfare benefit plans and qualified retirement plans of MCW, and (ii) any and all indemnification rights that Dr. Love may have by contract, under the By-Laws of MCW and pursuant to any insurance that MCW carries.

3. **Compliance with Older Workers Benefit Protection Act.** Dr. Love and MCW acknowledge that it is their mutual intent that Dr. Love's release and discharge of the Released Parties from liability under the ADEA (the "Release") contained in Section 2 of this Agreement

fully comply with the Older Workers Benefit Protection Act. Accordingly, this Agreement requires, and Dr. Love agrees, that:

(a) The Release of his rights or claims under the ADEA is his knowing and voluntary act;

(b) This Release shall apply only to rights and claims arising prior to the Effective Date of this Agreement, and the Release shall not apply to rights or claims that arise after the Effective Date of this Agreement;

(c) He is releasing rights or claims under the ADEA in exchange for consideration consisting of a severance payment as described in Section 4 of the Separation Agreement (minus legally required deductions), and but for this Agreement, Dr. Love acknowledges that he would not otherwise be entitled to the payment described therein;

(d) He has been advised in writing by MCW to consult with an attorney prior to executing this Agreement;

(e) He has been given a period of at least 21 days within which to consider this Agreement;

(f) He has the right to revoke this Agreement for a period of seven (7) days after his execution of this Agreement, and none of the terms and provisions of this Agreement shall become effective or enforceable until the revocation period has expired. In computing the seven-day period, the day the Agreement is executed by Dr. Love shall not be included, and the last day of the seven-day period shall be included. If the last day of the period falls on a Saturday, Sunday, or holiday, the last day of the revocation period shall be the next business day following the Saturday, Sunday, or holiday.

(g) He has read and fully understands the terms of this Agreement.

4. **Effective Date.** The effective date of this Agreement (the "Effective Date") shall be the day following the revocation period referred to in Subsection 3(f) of this Agreement, unless the Agreement is revoked in writing by Dr. Love during that period. Any revocation shall be delivered to Vice President and General Counsel, Office of the General Counsel, Medical College of Wisconsin, 8201 Watertown Plank Road, Milwaukee, WI 53226.

5. **Non-Admission.** Neither the negotiations concerning this Agreement, nor the actual provision of consideration set forth in this document, nor the drafting or execution of this document by either party shall be construed as an acknowledgment or admission by either party of any liability to the other party, other than under this Agreement, or to any other individual or entity of any wrongdoing under federal, state or local law.

6. **Entire Agreement.** This Agreement, and the Separation Agreement, contain, and their terms constitute, the entire agreement of the Parties concerning all matters affecting Dr. Love's employment with MCW and supersede all prior agreements, understandings and practices

concerning such matters, including without limitation, any prior employment agreements Dr. Love may have had with MCW, the provisions of any MCW personnel documents, handbooks or policies and any prior customs or practices of MCW with respect to bonuses, severance pay, fringe benefits or otherwise. Notwithstanding the foregoing, the terms of all welfare benefit and retirement plans of MCW shall continue to apply to Dr. Love and his family in accordance with their terms.

7. **Governing Law; Binding Effect.** This Agreement shall be governed by the laws of the State of Wisconsin, without regard to principles of conflicts of laws. This Agreement shall inure to the benefit of and be binding upon the parties hereto, their successors, assigns, heirs and personal representatives.

8. **Severability.** If any provision of this Agreement shall be contrary to the laws of Wisconsin or any other applicable law, at the present time or in the future, such provision shall be deemed null and void, but such shall not affect the enforceability of the remaining provisions of this Agreement.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed as of the date last below written.

Date: Aug. 26, 2014

Robert Love, M.D.

The Medical College of Wisconsin, Inc.

Date: _____  By: _____
John R. Raymond, Sr., MD
President and CEO

065128-0010\8548956.1

Insert final date

To Whom It May Concern:

      We are writing this letter in support of Dr. Robert Love in our capacity as Chief of the Division of Cardiothoracic Surgery and Chair of the Department of Surgery at the Medical College of Wisconsin (MCW). We have had the pleasure of working with Dr. Love since his recruitment to MCW in 2012 following a national search for new leadership in Adult Cardiac Surgery and Thoracic Transplantation. Historically, these programs had not enjoyed the attention and investment of resources necessary to compete with other area hospitals. In 2009 and 2010, MCW and Froedtert Hospital committed to restructuring the adult practice in cardiovascular disease including cardiology and CT surgery in an effort to enhance program development. Dr. Love joined MCW in the fall of 2012 as section head of adult cardiac surgery.

      When Dr. Love joined us, his clinical practice and focus was first directed towards establishing a modern, state of the art heart failure, MCS, and transplant program. Among the first issues addressed by Dr. Love included creating a dedicated heart team in the OR; something not previously established at this hospital. After much work and leadership by Dr. Love, this came to fruition in September of 2013, only one year after his arrival. Dr. Love led the efforts to relocate and redesign the plans for a new CVICU from a ten-bed unit into a twenty-bed state of the art unit immediately adjacent to the OR. Dr. Love restructured the clinical leadership of the CVICU with Dr. Love serving as the Surgical Director because of his Board Certification in Critical Care; this new unit will open in July. Additionally, Dr. Love played a key role in the design of two new cardiothoracic operating rooms and the purchase, outfitting, and redesign of new CPB pumps and perfusion services.

      Dr. Love's practice was largely focused on MCS, heart failure, and transplantation. The six-month survival for patients with long-term VAD implants has been greater than 90% since December of 2012 when Dr. Love introduced the HeartWare device into the clinical practice. The short-term device results for the rescue of the sickest patients, or salvage category, were 0% in 2012 (2 patients), 39% in 2013 (20 patients), and 57% in Q1 of 2014 (15 patients), which compares favorably to the INTERMACS benchmark of 25%.

      As a direct result of Dr. Love's leadership, Froedtert Hospital has acquired and implemented the clinical use of a full spectrum of modern MCS devices. This includes the first implantation in North America of the HeartWare HVAD outside of a clinical trial. Dr. Love played a critical role in the growth of the Adult Heart Failure/Transplant/MCS program. Dr. Love's presence and experience has also been instrumental in bringing the Lung Transplant Program volume up to the point of achieving CMS approval in 2013. During his time here, Dr. Love has been the Service Line Director for Thoracic Transplantation within the comprehensive Transplant Center. Under Dr. Love, our program now has added DCD Lung Transplantations (which Dr. Love pioneered in the early 90's as a way to increase lung utilization). Dr. Love has also established a research program and an Organ Recovery Lab, acquired funding to purchase an EVLP rig to do preclinical lung recovery on discarded lungs, and established a collaborative

group of researchers studying novel methods to assess lung recovery during EVLP using optical coherence tomography (OCT) analysis.

Despite many obstacles, surgical volume and revenue have grown since Dr. Love joined us. As one might expect, not all stake holders were aligned with Dr. Love's vision and he encountered resistance to the new direction that he proposed for this hospital. In addition, competitive realities within the Milwaukee medical community created challenges we did not anticipate when Dr. Love was recruited. In the end, the senior leadership of this medical campus, after much discussion, in which Dr. Love took a leading role, has decided that the best approach given these realities is to grow a cardiology and cardiac surgery clinical program with a model of multiple points of access rather than a single flagship program. Ultimately, the organization and Dr. Love feel that the direction he has outlined as his vision for program growth is no longer aligned with its direction. Dr. Love agrees that it is best for him to seek another opportunity better matched to his leadership and personal goals for his own practice in Cardiothoracic Surgery. Much has been accomplished, but ultimately the enterprise has decided to go in a different direction.

In his time here, Dr. Love has demonstrated an excellent work ethic and a commitment to program development. His accomplishments, as outlined above, have been many and have bettered our facilities. We wish Dr. Love well in future endeavors and support him fully.

Sincerely,

Dr. James S. Tweddell
The S. Bert Litwin Chair,
Cardiothoracic Surgery,
Children's Hospital of Wisconsin,
Professor of Surgery and Pediatrics,
Chair, Division Cardiothoracic Surgery,
Medical College of Wisconsin.
jtweddell@chw.org
Office - 414.266.2638
Cell – 414.573.1146

Dr. Douglas B. Evans
Professor in Surgery and Chair
Medical College of Wisconsin
devans@mcw.edu
Office – 414.805.5706