# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ROBERT LOVE,**
        Plaintiff,

v.                                         Case No. 15-C-650

**MEDICAL COLLEGE OF WISCONSIN et al.,**
        Defendants.

## ORDER

Plaintiff Robert Love, a surgeon, brings this action against his former employers and colleagues—defendants Medical College of Wisconsin (MCW), Froedtert Memorial Lutheran Hospital (FMLH), and other physicians employed by them—alleging retaliation in violation of the False Claims Act, defamation, tortious interference with prospective contractual relations, breach of contract, and intentional infliction of emotional distress. Plaintiff moves to amend his complaint, for leave to file a reply brief in support of his motion to amend, and for a telephonic status conference. Defendants move for protective orders citing federal law and state-law privileges.

## I. PLAINTIFF'S MOTION TO AMEND

Plaintiff moves for leave to file a second amended complaint reasserting claims that I previously dismissed pursuant to a general release of liability in a separation agreement between MCW and plaintiff. *See* Decision & Order, ECF No. 51. Based on recently acquired evidence, plaintiff's proposed pleading alleges that he was fraudulently induced to sign the separation agreement, which renders it (and its general release provision) void.

According to plaintiff, his privileges to practice at Clement J. Zablocki Veterans' Affairs Medical Center (Zablocki VA), which is affiliated with MCW, were revoked before he signed the separation agreement, but he was not notified until weeks after. He alleges that he would not have signed the agreement had he known that his privileges had already been revoked and that MCW fraudulently concealed this material information from him in order to induce his assent to the agreement. He further alleges that the revocation of his privileges was personally and professionally damaging to him.

Under Federal Rule of Civil Procedure 15(a), "a party may amend its pleading . . . with . . . the court's leave," and "[t]he court should freely give leave when justice so requires." Accordingly, unless there is good reason—"such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."—amendment should ordinarily be permitted. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Defendants argue that amendment would be futile here, but their arguments are unconvincing. First, they argue that I already ruled on the clarity and effect of the release, but my prior interpretation of the release is irrelevant if it is unenforceable because it was obtained through fraud or misrepresentation. *See, e.g.*, *Hennig v. Ahearn*, 601 N.W.2d 14, 21–25 (Wis. Ct. App. 1999) (discussing when breach of a contracting parties' duty to disclose information material to the transaction amounts to misrepresentation that renders the resulting contract void).

Next, defendants dispute whether the information concealed was material and present evidence to the contrary. However, the standard for futility is whether the

proposed amendment would survive a motion to dismiss, *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013), which concerns the facial plausibility of a claim for relief given the factual allegations in the complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Whether plaintiff will ultimately succeed in proving that the release is void is immaterial at this stage.

Finally, defendants argue that plaintiff's proposed pleading does not adequately allege fraud. A party alleging fraud must "state with particularity the circumstances constituting fraud," though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) ("This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case."). The proposed pleading alleges that plaintiff's privileges at Zablocki VA were revoked at MCW's behest near the end of a lengthy negotiating process that resulted in the separation agreement that plaintiff signed but that MCW fraudulently concealed that fact until weeks after the agreement was executed in order to induce his assent to its terms. This is sufficient to satisfy Rule 9(b)'s heightened pleading standard for fraud.

Defendants also argue that plaintiff unduly delayed in seeking amendment and is doing so in bad faith, but I disagree. Plaintiff sought amendment reasonably soon after learning that his privileges at Zablocki VA were revoked significantly earlier than he had long believed. To the extent plaintiff delayed at all, his delay was negligible and does not warrant denying him leave to amend his complaint. *See Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008); *see also J.P. Morgan Chase Bank, N.A. v. Drywall Serv. &*

3

*Supply Co.*, 265 F.R.D. 341, 347 (N.D. Ind. 2010) ("Undue delay is most likely to result in undue prejudice when a combination of . . . factors . . . —delay in proceedings without explanation, no change in the facts since filing of the original complaint, and new theories that require additional discovery—occur together.").

For the foregoing reasons, I will grant plaintiff's motion to amend his complaint and direct the Clerk of Court to file the proposed pleading. I will also grant plaintiff's related motion for leave to file a reply brief to rebut, among other things, defendants' assertions that he unduly delayed in seeking amendment.

## II. DEFENDANTS' MOTIONS FOR PROTECTIVE ORDERS

Defendants move for protective orders arguing that it would be burdensome and expensive for them to produce medical records requested by plaintiff in discovery because federal and state law—specifically, the federal Health Insurance Portability and Accountability Act (HIPAA) and Wisconsin's physician-patient and peer review privileges—require that certain personal and privileged health information and communications be redacted from those records before they are disclosed. In general, "[d]istrict judges have broad discretion over discovery matters." *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016). But "[b]efore restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

## A. HIPAA

Defendants move to limit discovery on plaintiff's claims for retaliation in violation of the False Claims Act. They argue that full discovery on those claims, which involve allegations of grossly substandard care by various physicians at MCW and FMLH, will require disclosure of patient medical records that first have to be redacted under HIPAA. Therefore, they say, discovery should be initially limited to less sensitive matters so that defendants may avoid this production burden and expense altogether if plaintiff's claims end up failing on some other basis.

The records sought are central to plaintiff's federal claims, and defendants provide nothing but a single unsubstantiated and unadorned assertion to show that it would be burdensome and expensive to produce them. Moreover, although HIPAA protects individually identifiable health information from disclosure, the False Claims Act protects whistleblowers from retaliation when they try to stop or reveal fraud against the government, as plaintiff allegedly did here. Piecemeal, sequential discovery might serve the public policy embodied in HIPAA but only by prolonging this case at the expense of the policy embodied in the False Claims Act. Such an approach is unnecessary given that policies can be reasonably accommodated through appropriate redaction and discovery governed by the general protective order that is already in place in this case. Thus, considering the value of the material sought, the supposed burden of producing it, and society's interest in this litigation, I will deny this motion for a protective order.

## B. State-Law Privileges

Defendants also move for a protective order exempting from disclosure and use in this case information and records protected by Wisconsin's physician-patient and

peer review privileges. Although federal common law governs plaintiff's federal claims and does not generally recognize such privileges, *see United States v. Bek*, 493 F.3d 790, 801 (7th Cir. 2007); *United States v. Aurora Health Care, Inc.*, 91 F. Supp. 3d 1066, 1068 (E.D. Wis. 2015), state law governs privilege as to plaintiff's state-law claims, *see* Fed. R. Evid. 501.

**1. Physician-Patient Privilege**

Wisconsin's physician-patient privilege "protects communications between a patient and a variety of professionals, including registered nurses, psychologists, marriage and family therapists and others." *Crawford ex rel. Goodyear v. Care Concepts, Inc.*, 2001 WI 45, ¶ 14 n.4, 243 Wis. 2d 119, 127 n.4, 625 N.W.2d 876, 881 n.4 (citing Wis. Stat. § 905.04). A patient's medical records often reveal privileged communications and information. Where, as here, they are sought in litigation, but the patient is not a party, "a health care provider is authorized . . . to invoke the . . . privilege on behalf of the patient, and obligated by professional responsibility to do so." *Id.* ¶ 26.

However, the privilege does not protect all information in a patient's medical records. Rather, it protects only "confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment." § 905.04(2); *see also* § 905.04(1)(b) (defining "confidential"). Therefore, I will grant this motion for a protective order to the extent that plaintiff seeks information regarding a state-law claim that is privileged under section 905.04. Otherwise, with respect to the physician-patient privilege, I will deny this motion.

## 2. Peer Review Privilege

"Peer review serves as 'one of medicine's most effective risk management and quality improvement tools' and 'provides a safe forum in which medical professionals can review the quality of care and work to reduce medical errors.'" *Rechsteiner v. Hazelden*, 2008 WI 97, ¶ 30, 313 Wis. 2d 542, 559, 753 N.W.2d 496, 505 (quoting Lisa M. Nijm, *Pitfalls of Peer Review*, 24 J. Legal Med. 541 (2003)). "Almost every state," including Wisconsin, "has adopted a 'peer review statute' to protect the work of medical peer review committees." *Id.* ¶ 31; *see* Wis. Stat. § 146.37–.38.

"The clear purpose of" Wisconsin's peer review statute "is to improve the quality of health care by encouraging persons to participate in the review of health care providers." *Rechsteiner*, 2008 WI 97, ¶ 32 (quoting *Limjoco v. Schenck*, 486 N.W.2d 567, 570 (Wis. Ct. App. 1992)). "The statute does this by freeing such persons from fear of a lawsuit through a grant of immunity to those who participate in such a review in good faith." *Limjoco*, 486 N.W.2d at 570; *see* § 146.37(1g). The statute also "protect[s] the confidentiality of the peer review process, in the hope that confidentiality w[ill] encourage free and open discussion, among physicians knowledgeable in an area, of the quality of treatment rendered by other physicians," while also "ensuring that the professional reputations of evaluated providers are preserved." *Rechsteiner*, 2008 WI 97, ¶ 35 (quoting *State ex rel. Good Samaritan Med. Ctr.-Deaconess Hosp. Campus v. Moroney*, 365 N.W.2d 887, 892 (Wis. Ct. App. 1985)).

A statute that grants immunity or protects the confidentiality of certain information does not necessarily create a privilege, however, and federal courts are not required "to apply every state rule that has been, mistakenly or otherwise, characterized as a

'privilege' by state judges or legislators." *See* 23 Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5432, Westlaw (updated Apr. 2017). Thus, I must consider whether Wisconsin's peer review statute creates a privilege, and if so, for whom.

In general, the applicable Federal Rules are concerned with testimonial privileges, i.e., the "right not to testify . . . that overrides a witness's duty to disclose . . . whether at trial or by deposition." *Black's Law Dictionary* (10th ed. 2014); *see* Fed. R. Evid. 501 advisory committee notes to 1974 enactment ("Rule 501 deals with the privilege of a witness not to testify."). The right not to testify necessarily implies that the privilege holder can waive that right and elect to testify or allow for the disclosure of certain information in court. Thus, information may be deemed "privileged," for present purposes, if it can only be disclosed in court with the consent of the person entitled to withhold it. *See Black's Law*, *supra* (alternatively defining "privilege" as "[a]n evidentiary rule that gives a witness the option to not disclose the fact asked for, even though it might be relevant" and "the right to prevent disclosure of certain information in court").

Wisconsin's peer review statute broadly prohibits disclosure of "an incident or occurrence report or any information acquired in connection" with "the review or evaluation of the services of health care providers" and specifically prohibits the use of certain reports and records from such reviews in a "civil . . . action against . . . any . . . health care provider." § 146.38(1m), (3t). However, "the health care provider whose services are being reviewed or evaluated" can consent to the disclosure of "[i]nformation acquired in connection with the review and evaluation of health care services" and the release of "records of such review and evaluation," so long as "the identity of any patient whose treatment is reviewed [is] withheld." § 146.38(3)(b). Therefore, Wisconsin's peer

8

Case 2:15-cv-00650-LA   Filed 10/25/17   Page 8 of 10   Document 119

review statute creates a privilege for the health care provider whose services were reviewed or evaluated with respect to the information and records described, subject to various exceptions and qualifications not relevant here. *E.g.*, § 146.38(3m)(a) ("[T]he person authorizing or with the authority to authorize the review or evaluation" can consent to the disclosure and release of information and records "in statistical form.").

Plaintiff argues that he is entitled to discovery concerning the review and evaluation of services that he provided. Based on the foregoing discussion, I agree and will deny defendants' motion for a protective order to the extent that they seek to avoid such disclosure on the basis of the peer review privilege. Otherwise, defendants may withhold information that plaintiff seeks regarding a state-law claim that is privileged under Wisconsin's peer review statute, at least to the extent that the relevant privilege holders have not consented to disclosure. *See Ollman v. Wisconsin Health Care Liab. Ins. Plan*, 505 N.W.2d 399, 407 (Wis. Ct. App. 1993).

## III. MOTION FOR A STATUS CONFERENCE

Plaintiff moves for a status conference arguing that the parties would benefit from guidance as to pending discovery issues, present motions, and plaintiff's possibly forthcoming motion for leave to file a third amended complaint. This order addresses the outstanding issues in this case that the parties have properly brought before me. If they have further disputes, including whether plaintiff should be permitted to again amend his complaint, they may raise them by motion, and I will address them accordingly. There is no need for a status conference at this time, so I will deny plaintiff's motion for one.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that plaintiff's motion for leave to amend his complaint (ECF No. 95) is **GRANTED**. The Clerk of Court shall file the proposed amended pleading (ECF No. 95-1) accordingly.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file a reply brief in support of amendment (ECF No. 107) is **GRANTED**. The Clerk of Court shall file the proposed reply brief (ECF No. 107-1) accordingly.

**IT IS FURTHER ORDERED** that defendants' first motion for a protective order (ECF No. 103) is **DENIED** and defendants' second motion for a protective order (ECF No. 114) is **GRANTED IN PART** and **DENIED IN PART** as discussed above. Discovery shall proceed accordingly.

**IT IS FURTHER ORDERED** that plaintiff's motion for a status conference (ECF No. 112) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 25th day of October, 2017.

/s Lynn Adelman
LYNN ADELMAN
District Judge