UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT LOVE,
    Plaintiff,

v.                                                         Case No. 15-C-0650

MEDICAL COLLEGE OF
WISCONSIN et al.,
    Defendants.

## ORDER

Plaintiff Robert Love is a surgeon formerly employed by the Medical College of Wisconsin (MCW)[1]. He brings this action against MCW and certain physicians currently or formerly employed by MCW. The case is before me on the following several motions: the MCW defendants' motion to dismiss portions of plaintiff's Third Amended Complaint ("TAC"), plaintiff's motion to compel production of certain documents, cross-motions for sanctions related to a discovery issue, and plaintiff's motions to restrict certain documents.

### I. MOTION TO DISMISS PORTIONS OF THE THIRD AMENDED COMPLAINT

*a. Background*

Plaintiff, a transplant surgeon and professor, alleges that beginning in 2012 he was employed by MCW and performed surgeries at Froedtert, a hospital staffed by MCW faculty. ECF No. 194 at ¶¶ 17-29. His relationship with his employer and colleagues deteriorated; he went on a leave of absence on May 8, 2014. *Id.* at ¶ 217.

---

[1] Throughout this order, I also use "MCW" to refer to the so-called MCW Defendants, which are MCW itself, Alfred Nicolosi, David Warltier, and Larry Lindenbaum.

Then, in on August 26, 2014 Dr. Love entered into a Separation Agreement with MCW (the "Separation Agreement"). *Id.* at ¶ 226. The Separation Agreement contained a release of claims, which provided:

> In exchange for the benefits and payment to him described in this agreement, Dr. Love hereby irrevocably and unconditionally releases, waives, and fully and forever discharges MCW and its past and current agents, servants, officers, trustees, insurers, attorneys, and employees and their respective successors and assigns (the "Released Parties") from and against any and all claims, liabilities, obligations, covenants, rights, demands, attorney fees and/or costs and damages of any nature whatsoever, whether known or unknown, anticipated or unanticipated, relating to or arising out of any agreement, act, omission, occurrence, transaction or matter up to and including the date of this Agreement, including without limitation, any and all claims relating to or arising out of his employment by MCW or the termination hereof.

ECF No. 194 at 83. Plaintiff alleges that even after he signed the Separation Agreement, his former colleagues continued to defame him and interfered with his job search by contacting potential employers to spread derogatory information about him.

Dr. Love filed this lawsuit in May, 2015. His allegations included retaliation in violation of the False Claims Act, defamation, tortious interference with prospective contractual relations, and intentional infliction of emotional distress. In its answer, MCW presented an affirmative defense that certain of plaintiff's claims were barred by the release contained in the Separation Agreement. MCW moved for judgment on the pleadings, and I agreed that the release was enforceable and barred any claims arising before August 26, 2014. ECF No. 51 at 3. Plaintiff subsequently filed two amended complaints, which I need not discuss in detail here.

The TAC, which is now before me, differs from earlier versions of the complaint in that it includes allegations that several individuals, including some defendants, engaged in a conspiracy to harm Dr. Love. Specifically, the complaint alleges that

various MCW anesthesiologists, as well as MCW in-house counsel Sarah Cohn, harbored malice toward Dr. Love for various reasons including that he had complained to management about substandard care that the anesthesiologists had provided and that he had complained to Ms. Cohn about another MCW doctor's alleged Medicare fraud. ECF No. 194 at ¶¶ 159-162. The TAC alleges that these individuals went outside MCW's normal Quality Assessment (QA) process to compile a list of cases in which they alleged that Dr. Love had provided substandard care. *Id.* at ¶ 164. In order to compile this list, they improperly accessed and disclosed patient records, in violation of HIPAA. *Id.*at ¶¶ 168-69, 175. The TAC documents several instances of the anesthesiologists sharing information about Dr. Love's cases with each other, with Ms. Cohn, and with MCW leadership. Ultimately, on May 7, 2014, Defendant Warltier (one of the alleged anesthesiologist co-conspirators) sent a letter to MCW leadership with an attached chart showing the medical records of a number of patients on which Dr. Love had performed surgery in 2014, the dates and types of the procedures, and whether the patient died. *Id.* at 193. According to the TAC, the purpose of the letter and the attached chart was to level charges of incompetence against Dr. Love and force him out. *Id.* Dr. Love was placed on a leave of absence the next day. *Id.* at 196.

    The conspiracy allegations reshape this lawsuit in two ways. First, they form the basis of two newly-pleaded claims for relief: Count X of the TAC is a common-law civil conspiracy claim, and Count XI is a civil conspiracy claim under Wis. Stat. § 134.01. Second, the conspiracy allegations are the basis for an argument that the Separation Agreement executed by Dr. Love in August, 2014 is void. I previously dismissed several claims as barred by the terms of the Separation Agreement, which includes a release of

3

claims based on conduct prior to August 26, 2014. (ECF No. 51). Love now argues that he was fraudulently induced to sign the Separation Agreement because MCW's in-house counsel, Sarah Cohn, knew of the conspiracy at the time that she negotiated the Separation Agreement with Dr. Love, but did not disclose that knowledge. Specifically, Dr. Love alleges that:

> 238. When Dr. Love signed the Separation Agreement, he reasonably relied on MCW to disclose all information material to his separation from MCW, and he justifiably trusted that MCW would disclose to him all such information.
>
> 239. When Dr. Love signed the Separation Agreement on August 26, 2014, he was not aware the Ms. Cohn, acting in concert with Dr. Nicolosi and the Anesthesiologist Co-Conspirators, had perpetrated their covert, months-long conspiracy, involving numerous violations of 42 U.S.C § 1320d-6, to injure Dr. Love in his reputation and profession; nor had any person or entity disclosed the existence of this conspiracy to Dr. Love.
>
> 240. Had Dr. Love been aware of the conspiracy, he would not have signed the separation agreement.
>
> 241. The Separation Agreement is void in its entirety because Ms. Cohn, MCW's agent, induced Dr. Love to sign the Separation Agreement by fraudulently concealing from him that she, Dr. Nicolosi, and the Anesthesiologist Co-Conspirators had conspired to injure Dr. Love in his reputation and profession.

(ECF No. 194). On this basis, Love again seeks to allege claims based on conduct prior to August 26, 2014.

b. *Motion to Dismiss under Rule 12(b)(6)*

Defendants have moved to dismiss several of Dr. Love's newly-pleaded claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a Rule 12(b)(6) motion, a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl.*

4

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In construing plaintiff's complaint, I assume that all factual allegations are true but disregard statements that are conclusory. *Iqbal*, 556 U.S. 678.

Dr. Love's fraudulent inducement theory rests on his assertion that, during the negotiations leading up to the execution of the Separation Agreement, MCW counsel Sarah Cohn withheld the information that "she and several MCW physicians had acted in concert to end Dr. Love's position at MCW by raising baseless criticisms of his treatment of particular patients." ECF No. 210 at 10. Defendants argue that these allegations are insufficient to state a plausible claim of fraudulent inducement. Thus, they argue, the Separation Agreement remains a bar to several of Dr. Love's claims. I agree with defendants.

A release of claims is a contract. *Archdiocese of Milwaukee v. Doe*, 743. F.3d 1101, 1106 (7th Cir. 2014). When a party seeks relief from contract obligations based on fraudulent inducement, Wisconsin courts follow the rule set forth in the Restatement (Second) of Contracts: "If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." *Id.* Further, a person's non-disclosure of a fact known to him is equivalent to an assertion that the fact does not exist (i.e., a misrepresentation) where, *inter alia,* "he knows that disclosure of the fact

5

would correct a mistake of the other party as to a basic assumption on which that party is making the contract and if non-disclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." Restatement (Second) of Contracts § 161(b).[2]

To begin, I cannot find that Ms. Cohn's alleged nondisclosure amounts to a "misrepresentation," even applying the generous standard of Rule 12(b)(6). Certainly, it is plausible that Dr. Love and his counsel entered the Separation Agreement negotiations less than fully cognizant of the circumstances giving rise to his departure, and that this lack of knowledge might have been corrected had Ms. Cohn disclosed what she knew of the effort to force out Dr. Love. But it is implausible that Ms. Cohn's non-disclosure of this information amounts to a breach of her duty to act in good faith

---

[2] Both parties' briefs invoke the premise that non-disclosure of a fact constitutes misrepresentation only when the non-disclosing party has an affirmative duty to disclose that fact. See, e.g., *In re Estate of Lecic*, 104 Wis.2d 592, 604 (1981); *Kaloti Enterprises v. Kellogg Sales Co.*, 283 Wis.2d 555, 570 (2005). This rule is drawn from cases involving the tort claim of intentional misrepresentation, and to apply it to the purely contractual issue at hand would be error. The Supreme Court of Wisconsin has explained:
> The introductory note to the Restatement (Second) of Contracts dealing with misrepresentation discusses the interrelationship between contract and tort actions for misrepresentation. It is noted that avoidance is primarily dealt with in the contract action, while an affirmative claim for liability may lie for misrepresentation under the law of torts. Although the requirements for establishing misrepresentation sufficient to avoid a contract and the rules for establishing tort liability parallel each other closely, there are differences.

*First National Bank & Trust Co. of Racine v. Notte*, 97 Wis.2d 207, 293 (1980). See also *Harley-Davidson Motor Co., Inc. v. PowerSports, Inc.*, 319 F.3d 973, 984 (7th Cir. 2003). In alleging that Ms. Cohn induced him to sign the Separation Agreement by concealing information about the alleged conspiracy, Dr. Love is not attempting to assert a standalone claim for tort damages; rather he is seeking relief from his obligations under the contract. See *Harley-Davidson*, 319 F.3d at 985. I must therefore "look to principles of contract . . . law in framing the issues and formulating a mode of analysis." Id. at 984.

and according to standards of fair dealing. What she allegedly had was, in effect, evidence that was bad for her side: evidence that might give rise to new claims, or that might substantiate those possible claims of which Dr. Love and his counsel were already aware. It cannot be that a party negotiating a release of claims (or a settlement agreement) must disclose its own bad facts in order to meet its duty of good faith and fair dealing; if that were the requirement, such negotiations would almost inevitably fail, because the party in receipt of the other side's bad facts would likely terminate the negotiations as soon as it received them. Indeed, part of the benefit of a release of claims to the party that secures it is the right to keep such facts confidential. Perhaps if Ms. Cohn had had knowledge of facts unknown to Dr. Love and related to some possible claim entirely unrelated to the circumstances giving rise to the Separation Agreement, she might have been under some obligation to disclose them (e.g., if she knew that Dr. Love had been exposed to a carcinogen in the course of his work for MCW which might give rise to future injury and hence a tort claim). But the facts that Ms. Cohn allegedly failed to disclose fall well within the universe of conflicts that the Separation Agreement negotiations set out to resolve, such that Ms. Cohn was under no obligation to disclose them.

Further, even if the alleged nondisclosure did amount to a "misrepresentation" that Dr. Love's colleagues did *not* "work in concert to end Dr. Love's position at MCW by raising baseless claims of his treatment of particular patients"—or, more generally, that Ms. Cohn did not at the time of the negotiations know of conduct by MCW employees that was unknown to Dr. Love and might stoke his desire to litigate—Dr. Love has not pled facts sufficient to support an inference that his reliance on such misrepresentation

7

was justified. *See Archdiocese of Milwaukee*, 743 F.2d at 1106. Dr. Love is a sophisticated, educated person; he was represented by counsel during these negotiations. The Separation Agreement that he signed explicitly provides for a release of "all claims, liabilities, obligations, covenants, rights, demands, attorney fees and/or costs and damages of any nature whatsoever, whether known or unknown, anticipated or unanticipated…including without limitation, any and all claims relating to or arising out of his employment by MCW or the termination thereof." For MCW to request such a provision, and for Dr. Love to agree to it, implies recognition by both parties that such unknown or unanticipated claims might exist; the provision would be meaningless otherwise. In effect, to present his fraudulent inducement argument, Dr. Love must claim that he agreed to a contract provision reflecting MCW's implicit acknowledgment that facts supporting known or unknown legal claims against MCW *might* exist in reliance on MCW's misrepresentation that certain of such facts did *not* exist. This position is unreasonable; such alleged reliance cannot be justified.

I conclude, therefore, that the release of claims is enforceable and remains a bar to those of Dr. Love's claims that are based on conduct prior to August 26, 2014. In their brief, defendants identify Counts I, III, X, XI and part of XII as barred by this release. I disagree with defendants' analysis of Count III, which states a defamation claim against MCW and Dr. Warltier. According to the complaint, Dr. Waltier allegedly made his defamatory statement sometime between May 8, 2014 and October 21, 2014. ECF No. 194 at ¶ 248.Therefore, the complaint leaves open the possibility that Dr. Waltier's statement occurred after Dr. Love signed the release. I agree with defendants' analysis of the other counts. In short, I will grant MCW's motion in part, and dismiss with

prejudice Counts I, X, XI, and the portion of Count XII based on conduct prior to August 26, 2014.

## II. MOTION TO COMPEL DISCOVERY

Dr. Love has filed a motion to compel production of certain documents. Again, the TAC differs from earlier versions of the complaint because it includes allegations that MCW's former in-house counsel Sarah Cohn conspired with other current and former MCW employees to injure Dr. Love in his profession and reputation. ECF No. 219 at 2. After filing the TAC, Dr. Love requested production of documents containing certain agreed-upon search terms that were maintained in the email accounts of Ms. Cohn and other alleged participants in the conspiracy. *Id.* MCW eventually produced 292 pages, along with a Privilege Log listing 96 emails sent to or from Ms. Cohn, which MCW claims are protected by attorney-client privilege. Dr. Love now asks that I compel production of these emails.

I need not address the privilege issue at this time. Dr. Love initially sought discovery of these emails in connection with the conspiracy claims alleged as Counts X and XI of the Third Amended Complaint. As discussed above, those claims are barred by the terms of the Separation Agreement. Dr. Love has provided me no reason to think that these emails are relevant to his remaining claims or that discovery of them would be proportional to the needs of the case within the meaning of Fed. R. Civ. Pro. 26(b)(1). Therefore, I will dismiss without prejudice Dr. Love's motion to compel. If he believes that discovery of these emails is called for given the scope of his remaining claims, he may make that argument in a separate motion.

## III. MOTIONS FOR SANCTIONS

*a. Plaintiff's Motion for Sanctions*

Dr. Love has asked that I impose sanctions on MCW for allegedly destroying all the MCW-stored[3] emails of Dr. James Tweddell, who was Chair of the Division of Cardiothoracic Surgery at MCW and Dr. Love's direct supervisor during Dr. Love's employment there. When a party fails to preserve electronically stored information, the court's response is governed by Fed. R. Civ. Pro. 37(e), which reads:

> **Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation, may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume that the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

---

[3] In its response to this motion, MCW argues that it did not have custody of Dr. Tweddell's email account and that instead Children's Hospital of Wisconsin (CHW) had custody of Dr. Tweddell's emails. MCW further states that any emails that existed on CHW's server were removed by CHW on August 25, 2015. Dr. Love's response clarifies that his motion is based on MCW's counsel's representation that emails in an MCW account were permanently removed when Dr. Tweddell left MCW around July 1, 2015. Because I find that no sanctions are called for based on Dr. Love's representations, I need not determine whether MCW in fact hosted and controlled an email account used by Dr. Tweddell.

I agree with plaintiff that it appears MCW failed to take reasonable steps to preserve Dr. Tweddell's emails. Plaintiff filed his complaint and conveyed a copy to MCW's counsel on May 28, 2015. ECF No. 196. As plaintiff accurately notes, Dr. Tweddell's name appears frequently in the complaint; though Tweddell is not a party to this case, he was an important participant in many of the events and communications the complaint describes. *Id.* Thus, plaintiff concludes, "one could easily discern from the Complaint that Dr. Tweddell would be a key witness in this action and that his emails would contain relevant information." *Id.* at 5. Further, a July 23, 2018 letter from MCW's defense counsel to plaintiff's counsel states that MCW exported and saved emails of two MCW physicians on July 1, 2015 for purposes of preserving evidence pertinent to Dr. Love's case. ECF No. 196-4. The letter also states that Dr. Tweddell's emails had not been preserved, because his emails "were removed" when he left MCW. *Id.* Dr. Tweddell left MCW on July 1, 2015, the same day that the other physicians' emails were preserved in anticipation of this lawsuit. ECF No. 194 at 6. Plaintiff concludes that Dr. Tweddell's emails were destroyed on or around the same day that the other physicians' emails were preserved, and more than a month after MCW's counsel received Love's complaint. *Id.* at 4. Clearly, MCW had notice and means to preserve Dr. Tweddell's emails, and should have done so.

However, the severe sanctions provided for by subdivision 37(e)(2) can apply only when the court finds that the party that lost the information acted *with the intent* to deprive another party of the information's use in the litigation. As the Advisory Committee Notes to the 2015 Amendment (the "Notes") explain, a party's negligent or even grossly negligent behavior in losing or destroying evidence does not logically

11

support the reasonable inference that the evidence was unfavorable to the party responsible for the loss. Dr. Love's evidence that MCW destroyed the emails with intent to deprive him of their contents is circumstantial at best; further, as he acknowledges, he has in fact received several of Dr. Tweddell's emails that survived in the accounts of other MCW employees. I conclude that Rule 37(e)(2) sanctions would be inappropriate under these circumstances.

Further, I am not at present persuaded that the destruction of Dr. Tweddell's emails has prejudiced Dr. Love such that curative measures are called for under subdivision 37(e)(1). The Advisory Committee Notes explain that, in certain situations "the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties." Fed. R. Civ. P. 37. "Requiring the party seeking curative measures to prove prejudice may be reasonable in such situations." *Id.* Dr. Love has access to an "abundance of preserved information" regarding Dr. Tweddell's knowledge of and participation in the events leading to Dr. Love's departure from MCW. MCW has produced several of Dr. Tweddell's emails that survived in the accounts of other employees; also, Dr. Love has yet to depose Dr. Tweddell. Further, Dr. Love has provided no developed explanation of how the destruction of Dr. Tweddell's emails has prejudiced Dr. Love in the prosecution of his remaining viable claims (i.e., those that are not barred by the Separation Agreement).

For these reasons, I will deny Dr. Love's motion for sanctions. After he has deposed Dr. Tweddell, he may if he so wishes move for curative measures under Fed.

R. Civ. Pro. 37(e)(1). At that time, it will be his burden to establish that the destruction of Dr. Tweddell's emails has prejudiced him with respect to his viable claims.

   *b. Defendant's Motion for Sanctions Against Plaintiff's Counsel*

Defendants have moved for sanctions against plaintiff's counsel on two grounds: first, that plaintiff's motion for sanctions for the destruction of the Tweddell emails was frivolous; and second, that counsel unilaterally and at the last minute cancelled the deposition of Dr. Tweddell. As authority, defendants cite 28 U.S.C. § 1927, which permits the court to require an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" to "satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Defendants allege that they incurred costs in defending the motion, and costs related to the cancellation of the Tweddell deposition.

Regarding plaintiff's motion for sanctions: though I do not find that sanctions are called for at this time, neither do I find that plaintiff's motion was "frivolous" or "vexatious." As discussed above, plaintiff had reason to think that defendants had failed to reasonably act to preserve information, because defendants' counsel had sent a letter effectively acknowledging as much. This is the precise sort of situation to which Fed. R. Civ. Pro. 37(e) (and the case law it supplanted) were designed to apply; though I am within my discretion not to act on plaintiff's motion, the motion itself was not frivolous.

Regarding the cancellation of Dr. Tweddell's August 9 deposition: the parties perceive the event differently. Defendants say that the deposition had been scheduled and confirmed, and that plaintiffs unilaterally cancelled it on August 6, without good

13

cause. Plaintiff's attorneys insist that the August 9 date had never been confirmed. Both parties have provided as exhibits the email chains leading up to this incident and it appears to me to have been a miscommunication. I will not sanction plaintiff's counsel at this time. I note, however, that the miscommunication was greatly exacerbated by the confrontational communication style of plaintiff's counsel as evidenced in these emails, which verges on unprofessional and risks undermining the efficient resolution of this case. Plaintiff's counsel are now on notice that I expect civility and professional cooperation in working through the pretrial process. I do not look kindly on overaggressive posturing of the sort on display in these emails. Our shared goal is a just resolution on the merits.

## IV. MOTIONS TO RESTRICT DOCUMENTS

Finally, plaintiff has filed two motions for leave to file certain documents under restriction. In general, this court considers any document filed to be public unless it is accompanied by a separate motion requesting that the document be sealed. General L. R. 79(d)(1) (E.D. Wis.). The motion to seal must be publicly filed and must describe the general nature of the information withheld. General L. R. 79(d)(2). "To the extent possible, the movant should include with the public filing a version of the document or material that redacts only those portions of the document that are subject to the sealing request." Id.

"Any motion to seal must be supported by sufficient facts demonstrating good cause for withholding the document . . . from the public record." General L. R. 79(d)(3). "In civil litigation only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in

14

confidence (such as the name of a minor victim of a sexual assault), is entitled to be kept secret . . . ." Baxter Int'l, Inc. v. Abbott Labs., 297 F.3d 544, 546 (7th Cir. 2002). Yet, "[t]he strong presumption of public disclosure" only applies to documents that "influence or underpin [a] judicial decision," which is to say, documents that "reached this court unnecessarily" need not be "open to public inspection." See id. at 545, 548.

Love moves to file under restriction Exhibits 11, 12, 13, 14, and 17 to his August 9, 2018 Motion for Sanctions. Love also moves to file under restriction Exhibit 3 to his September 11, 2018 Reply in Support of Motion for Sanctions. These exhibits all consist of documents that MCW and Froedtert produced in discovery and designated confidential, pursuant to the terms of the protective order in this case. I did not review or rely on any of these documents in deciding Love's motion for sanctions. They may remain under restriction.

## V. CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that the MCW Defendants' Motion to Dismiss (ECF No. 197) is **GRANTED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel (ECF No. 219) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Reply in Support of Motion to Compel (ECF No. 224) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions (ECF No. 195) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Sanctions (ECF No. 209) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Leave to File Under Restriction (ECF Nos. 198, 212) are **GRANTED.**

Dated at Milwaukee, Wisconsin, this 20th day of November, 2018.

                                        s/Lynn Adelman
                                        LYNN ADELMAN
                                        District Judge